UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LUCIANO SANTIAGO,

                      Plaintiff,

            -against-

MAKSUD TRAX AGADJANI AND
TRAX NYC CORP.,

                    Defendants.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21 CV 7090 (KAM) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 15, 2019, plaintiff Luciano Santiago commenced this action in New York State Supreme Court, Queens County, against defendants Maksud Trax Agadjani[1] and Trax NYC Corp. ("Trax"), alleging that defendants falsely reported to the police that Santiago had stolen Trax merchandise, causing Santiago to be arrested and charged with grand larceny in the third degree ("Verified Complaint"). (Compl.[2]; Not. of Removal[3] ¶¶ 1, 3). The case was removed to this Court on December 22, 2021, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Not. of Removal).

On August 23, 2022, plaintiff sought leave to file an amended Complaint. Thereafter, on September 30, 2022, the Honorable Kiyo A. Matsumoto referred the motion to amend to the undersigned.

For the reasons set forth below, it is respectfully recommended that plaintiff's motion to

---

[1] According to defendants, defendant Maksud Agadjani ("Agadjani") is improperly named as "Maksud Trax Agadjani." (Memorandum of Law of Defendant Maksud Agadjani and Defendant and Counterclaim Plaintiff Trax NYC Corp. in Opposition to Plaintiff Luciano Santiago's Motion for Leave to File a Further Amended Complaint, dated September 9, 2022 ("Defs.' Mem.") at 1). (ECF No. 22).

[2] Citations to "Compl." refer to plaintiff's Verified Complaint, filed in New York State Supreme Court, Queens County on August 15, 2019. See Luciano Santiago v. Maksud Trax Agadjani and Trax NYC Corp., Index No. 714118/2019 (the "State Court Action"). (ECF No. 1-1).

[3] Citations to "Not. of Removal" refer to the defendants' Notice of Removal filed in this court on December 22, 2021. (ECF No. 1).

amend be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In plaintiff's Verified Complaint, plaintiff alleges that he is a resident of Nassau County, N.Y. (Compl. ¶ 1). Defendant Trax is a corporation and/or unincorporated entity duly authorized to transact business in New York, and Maksud Trax Agadjani ("Agadjani"), a resident of New York, is the President, manager and/or agent of Trax. (Id. ¶¶ 2–4, 6, 7). Plaintiff alleges that on or about February 5, 2019, inside 604 West 47th Street, New York, N.Y., defendant Agadjani reported to the New York City Police Department that plaintiff had stolen property from defendants. (Id. ¶ 8). According to plaintiff, these allegations were false, the events upon which the arrest was predicated were "fabricated by the defendants," and they were made "with the express intent of causing the plaintiff to be arrested." (Id. ¶¶ 12–14, 17). Plaintiff was thereafter arrested for grand larceny in the third degree. (Id. ¶ 9). Plaintiff alleges that on or about May 8, 2019, the criminal complaint was dismissed in New York County Criminal Court. (Id. ¶ 10).

In his Verified Complaint, filed on August 15, 2019, in New York Supreme Court, Queens County, plaintiff raised three causes of action: 1) false arrest (First Cause of Action) (id. ¶¶ 12–19); 2) intentional infliction of emotional distress (Second Cause of Action) (id. ¶¶ 21–28); and 3) prima facie tort (Third Cause of Action) (id. ¶¶ 30–34). On May 15, 2020, the state court judge granted the defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress but denied the motion to dismiss the false arrest and prima facie tort claims. (Order, dated May 15, 2020, ECF No. 1-2 at 3–4).

Thereafter, on December 20, 2021,[4] plaintiff filed an Amended Complaint in the State

---

[4] The delay between the May 2020 Order and the Amended Complaint, as explained by defendants, is that plaintiff's attorney passed away in the summer of 2021 due to COVID-19, so there was no action on the case until

Court Action, raising claims of false arrest, negligent infliction of severe emotional distress, prima facie tort and malicious prosecution, violation of New York's General Business Law § 349, two counts of defamation – libel and slander and libel and slander *per se* – and a claim of false imprisonment under 42 U.S.C. § 1983.  (Am. Compl.[5]).  In addition to adding causes of action to his Amended Complaint, plaintiff added factual allegations postdating the filing of the first complaint relating to those novel claims, and additional facts underlying his relationship with defendants and his arrest in 2019.

      Among other things, the Amended Complaint alleges that plaintiff is a "reputable businessmen" [sic], "widely known in the Hip Hop Community and elsewhere as Lou the Jeweler."  (Am. Compl. ¶¶ 39, 41).  Defendant Agadjani is alleged to "fanc[y] himself a larger than life character posting items to blogs and the internet as if he is some kind of video start [sic]," and "position[s] himself as the mother Theresa of jewelers."  (Id. ¶¶ 40, 42).  Plaintiff alleges that on or about February 14, 2020, defendant Agadjani posted or republished a video blog, alleging that Lou the Jeweler, referring to plaintiff, had worked for Agadjani for six years and that he "stole a considerable amount of gold, and we finally caught him red-handed."  (Id. ¶ 40).  According to plaintiff, Agadjani further stated in the blog that plaintiff had stolen gold chains and melted them down, and he was "in custody now in the Midtown Precinct for grand larceny."  (Id.)  Also posted or republished on that day was another post by Agadjani claiming that plaintiff had worked for defendant "[t]o get closer and closer and closer and to rob me on the back end. . . . I'm a trusting person trying to build a business . . . [and] trying to teach people

---

September 27, 2021 when new counsel appeared and sought to file an amended complaint.  (Not. of Removal ¶¶ 7-8; see also Defs.' Mem. at 2).  Defendants consented to the filing of the Amended Complaint, and plaintiff's motion to amend was withdrawn.  (Not. of Removal ¶ 8).

    [5] Citations to "Am. Compl." refer to the Amended Complaint filed in Supreme Court, Queens County, on December 20, 2021.  (ECF No. 1-3).

about jewelry.  This person is something different.'" (Id. ¶ 42).  The Amended Complaint contains additional quotations from the blog, some involving profanity, but discussing theft and fraud:  "I have to calculate the savagery of these disgusting [inaudible].  The tactics that they use for fraud is breach of trust. . . . You can't f-----g trust these pieces of f-----g s--t is the bottom line.  You gotta put your foot on their throat, figuratively speaking."  (Id. ¶ 43).

Plaintiff alleges that each statement accusing him of being a thief was entirely false and deliberately aimed at trying to "damage and destroy Plaintiff's reputation and personal wellbeing."  (Id. ¶¶ 44, 45).  Plaintiff alleges that by knowingly publishing these lies on social media postings, which were "libelous on [their] face," defendant damaged plaintiff's reputation and his professional name, resulting in loss of income, shame, and injury to his feelings.  (Id. ¶¶ 44, 46, 48, 52, 57).

On December 22, 2021, defendants filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1441 and 1446(b)(3), seeking to remove the case to federal court based on the newly added federal claim brought pursuant to 42 U.S.C. § 1983.  (Not. of Removal).  Under 28 U.S.C. § 1446(b)(3), when the initial claims in a case are not subject to removal, the defendant may file a notice of removal within 30 days "after receipt by the defendant through service or otherwise, of a copy of an amended pleading . . . or other paper from which it may first be ascertained that the case is one which is or has become removable." [6]

On August 23, 2022, plaintiff filed the instant motion to amend the Amended Complaint, seeking to add claims based on defendants' alleged continued publication on social media blogs of "slanderous statements" against plaintiff as recently as May of 2022, which plaintiff alleges

---

[6] Since the case first became subject to removal when plaintiff filed his amended state court pleading on December 20, 2021, and the Notice of Removal was filed on December 22, 2021, the case was timely removed to this Court.

are intended to besmirch plaintiff's character, harm his reputation, and interfere with his ability to secure employment. (Pl.'s Mem.[7] at 2–3). Plaintiff also seeks to add claims of violations of the wage and hour provisions under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL") §§ 190 et seq. and 650, et seq. (Id. at 2).

DISCUSSION

A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend "its complaint once as a matter of course within 21 days after serving the [original] complaint or within 21 days after a responsive pleading has been served." Blanchard v. Doe, No. 17 CV 6893, 2019 WL 2211079, at *3 (E.D.N.Y. May 22, 2019); Santagata v. Diaz, No. 17 CV 3053, 2019 WL 2164082, at *2 (E.D.N.Y. May 17, 2019). After that, amendments are allowed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires." Id. While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Bensch v. Estate of Umar, 2 F.4th 70, 81 (2d Cir. 2021) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing in addition, "repeated failure to cure deficiencies by amendments previously allowed").

---

[7] Citations to "Pl.'s Mem." refer to the "Memorandum in Support of Plaintiffs' [sic] Motion for Leave to File Amended Complaint," dated August 23, 2022. (ECF No. 21-3).

B.  Analysis

1)  Plaintiff's Proposed Amendments

In the proposed second Amended Complaint ("Proposed Amended Complaint"), plaintiff alleges that defendants operate a jewelry emporium located in the Diamond District of Manhattan and that defendant Agadjani possesses ownership interests and operational control over the functions of Trax.  (Prop. Am. Compl.[8] ¶¶ 32, 33).  This includes control over the employees' working conditions, and employment compensation, including the power to hire and fire employees.  (Id. ¶¶ 34, 35, 39).  Plaintiff alleges that during 2019, defendants had a gross annual volume of sales of not less than $500,000, jointly employed plaintiff, and should be considered employers under the FLSA and the NYLL.  (Id. ¶¶ 34, 36, 39, 40).  In the alternative, plaintiff alleges that defendant Agadjani operated Trax as an alter ego by taking various actions, which evinced a failure to adhere to the corporate form.  (Id. ¶ 38).

Plaintiff alleges that he was employed by defendants as a sales representative from approximately June 2012 until February 14, 2019.  (Id. ¶¶ 49, 50).  He alleges that he worked from 10:00 a.m. until 7:00 p.m., "Mondays through Fridays and Saturdays," typically working 60 hours per week.[9]  (Id. ¶¶ 55, 56).  He claims that he was paid $15,600 per year and he did not receive tips.  (Id. ¶¶ 50, 51).  Plaintiff was paid his wages in cash, and he was paid every two weeks.  (Id. ¶¶ 57, 59, 88).  He alleges that from December 2018 until about February 25, 2019, he was paid a fixed salary of $300 per week.  (Id. ¶ 58).  He complains that he was given 30-

_____

[8] Citations to "Prop. Am. Compl." refer to Plaintiff's Proposed Second Amended Complaint, dated August 23, 2022.  (ECF No. 21-2).

[9] According to plaintiff's Proposed Amended Complaint, plaintiff worked these hours from "June 2019 to February 14, 2019."  (Prop. Am. Compl. ¶ 56).  Presumably, plaintiff has made a typographic error and intended to indicate these were his hours from June 2012 to February 2019.

minute meal breaks but they were interrupted when plaintiff was required to perform work duties.  (Id. ¶ 62).  He further alleges that although customers wrote in tips for plaintiff, he never received tips, was never notified that tips were being included as an offset to wages, and that defendants failed to keep track of tips or of plaintiff's time.  (Id. ¶¶ 63–66, 76–84).  He never received minimum or overtime wages as required by the FLSA and NYLL, and he was not provided with an accurate statement of wages as required by Section 195(3) of the NYLL, nor was he provided with a statement at the time of hire as required by Section § 195(1).  (Id. ¶¶ 60, 61, 67–69, 71, 72, 87, 90, 91, 93, 94).

Plaintiff's Proposed Amended Complaint alleges violations of:  1) the minimum wage provisions of the FLSA (First Cause of Action) (id. ¶¶ 99–104); 2) violations of the overtime provisions of the FLSA (Second Cause of Action) (id. ¶¶ 106–08); 3) violations of the New York Minimum Wage Act (Third Cause of Action) (id. ¶¶ 110–13); 4) violations of the overtime provisions of the NYLL (Fourth Cause of Action) (id. ¶¶ 115–17); 5) violations of New York's spread-of-hours Wage Order (Fifth Cause of Action) (id. ¶¶ 119–21); 6) violations of the NYLL's recordkeeping requirements (Sixth Cause of Action) (id. ¶¶ 123–24); 7) violations of the wage statement provisions of the NYLL (Seventh Cause of Action) (id. ¶¶ 126–27); 8) recovery of equipment costs[10] (Eighth Cause of Action) (id. ¶¶ 129–30); and 9) unlawful deduction from tips in violation of the NYLL (Ninth Cause of Action) (id. ¶¶ 132–36).  In addition to the new wage and hour claims, plaintiff has added a new Twelfth Cause of Action, alleging intentional infliction of severe emotional distress (id. ¶¶ 156–64), and a new Fourteenth Cause of Action, alleging tortious interference with prospective business relationships.  (Id. ¶¶ 174–90).

---

[10] This appears to be based on a claim that plaintiff was required to purchase "'tools of the trade' with his own funds—including several pairs of pants and hats," which reduced his wages.  (Prop. Am. Compl. ¶¶ 70, 129).

The Proposed Amended Complaint continues to contain causes of action for false arrest (Tenth Cause of Action) (id. ¶¶ 138–45); negligent infliction of severe emotional distress (Eleventh Cause of Action) (id. ¶¶ 147–54); for prima facie tort and malicious prosecution (Thirteenth Cause of Action) (id. ¶¶ 166–72); violation of General Business Law § 349 (Fifteenth Cause of Action) (id. ¶¶ 192–93); defamation-libel-slander (Sixteenth Cause of Action) (id. ¶¶ 195–206); defamation-libel-slander *per se* (Seventeenth Cause of Action (id. ¶¶ 208–15); and false imprisonment under Section 1983 (Eighteenth Cause of Action) (id. ¶¶ 217–20).  Plaintiff has also added a new factual allegation in the Sixteenth Cause of Action, alleging that in the video posted or republished on February 14, 2019, Agadjani warned others about Santiago, "If you think about hiring him don't."  (Id. ¶ 196).  Plaintiff also added a new factual allegation to that same cause of action, claiming that defendant "continues to post false and disparaging and slanderous statements about Plaintiff."  (Id. ¶ 201 (referring to Exs. A–C, which are transcriptions of certain video postings on or about February 3, 2022, March 2, 2022 and repeatedly on May 11, 2022)).

2)  Futility

Defendants object to the filing of the Amended Complaint on grounds of futility.

Courts may deny motions to amend where the proposed amendment would be futile as a matter of law.  Such futility is established where the amendment "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Thea v. Kleinhandler, 807 F.3d 492, 496–97 (2d Cir. 2015) (quoting IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015)); see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (holding "[a] proposal to amend a complaint is futile if the proposed

amended complaint would fail to state a claim upon which relief could be granted"). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d at 389. Accordingly, the Court must "consider 'the proposed amendment[s] . . . along with the remainder of the complaint,' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement of relief." Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (quoting Starr v. Sony BMG Music Ent., 592 F.3d 314, 323 n.3 (2d Cir. 2010), and citing Ashcroft v. Iqbal, 556 U.S. 662, 678–80 (2009)); see also Debrosse v. City of New York, No. 13 CV 3822, 2016 WL 3647589, at *2 (E.D.N.Y. May 25, 2016), report and recommendation adopted, 2016 WL 3647590 (E.D.N.Y. June 30, 2016).

In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, the Supreme Court clarified the pleading standards under which courts are to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). Now, when deciding a Rule 12(b)(6) motion to dismiss, courts should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556); see also Hayden v. Paterson, 594 F.3d 150, 160–61 (2d Cir. 2010).

Under this heightened pleading standard, "'labels, conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. However, "plausibility" does not rise to the level of "probability" but instead requires "more than a sheer possibility that a defendant has acted unlawfully." Hayden v. Paterson, 594 F.3d at 161 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

Thus, in deciding a motion to amend that is challenged on grounds of futility, the Court considers whether the newly added claims contain sufficient factual allegations to state a plausible claim for relief. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard has not been satisfied. Ashcroft v. Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

3) Plaintiff's FLSA Wage and Hour Claims

a) Statute of Limitations Bar

As an initial matter, defendants contend that plaintiff's proposed claims under the FLSA, which include collective action allegations, for violations of the minimum wage and overtime provisions are time-barred. (Defs.' Mem. at 6–7). If the proposed amendment seeks to add

claims that are time-barred, amendment is likely futile.  See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (explaining "[a]mendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations"); see also Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 81–82 (E.D.N.Y. 2011).

Pursuant to 29 U.S.C. § 255(1)(a), FLSA claims are subject to a two-year statute of limitations unless plaintiff can prove that defendant's FLSA violation was willful, in which case a three-year statute of limitations applies.  "A cause of action under the FLSA for 'unpaid overtime compensation' accrues 'when an employer fails to pay required compensation for any workweek at the regular payday for the period in which the workweek ends.'"  See Decraene v. Neuhaus (U.S.A.), Inc., No. 04 CV 2876, 2005 WL 1330761, at *8 (S.D.N.Y. June 3, 2005) (quoting 29 C.F.R. § 790.21(b)).  Accordingly, "a separate cause of action accrued to [plaintiff] on each regular pay day for a pay period in which [he was not paid minimum wage or] his overtime work went uncompensated."  See id. at *8 (citing Shandelman v. Schuman, 92 F. Supp. 334, 335 (E.D. Pa. 1950)); see also Addison v. Reitman Blacktop, Inc., 283 F.R.D. at 81 (explaining that "[c]ourts have held that for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period") (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)).  Plaintiff's employment with Trax ended no later than February 14, 2019.  (Prop. Am. Compl. ¶ 49).  According to defendants, "[n]o claims for unpaid wages or unpaid overtime compensation could have accrued after the workweek Plaintiff's employment ended."  (Defs.' Mem. at 7).

In considering whether plaintiff's claims are time-barred, the Court looks to "[t]he date of the filing of the motion to amend" as "the date the action was commenced for statute of

limitations purposes since the defendant is on notice of the new claims as of the filing of the

motion." Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 69 (E.D.N.Y. Mar. 27, 2015), adopting

report and recommendation, id. at 57–87 (E.D.N.Y. Dec. 12, 2014) (quoting Lekic v. 222 E. 8th

St. LLC, No. 11 CV 1242, 2012 WL 4447625, at *4 (E.D.N.Y. Sept. 25, 2012)).  Plaintiff alleges

that counsel for the defendants had been on notice that an amended complaint was forthcoming

and argues that, given that the relevant records are in defendant's control, defendant "had ample

notice" "since the winter," and therefore, there was no prejudice to adding the FLSA claims.

(Pl.'s Aug. 12, 2022 Ltr.[11] at 2).  As for the additional state law claims, plaintiff argues that the

"earlier iterations" of the state court complaint provided sufficient notice of potential claims.

(Id.)

      Where, as here, a defendant receives notice or a copy of the proposed amended

pleadings prior to the date of the filing of the motion to amend, courts have used the date when

defendants were put on notice of the new claims as the date from which to calculate the statute of

limitations.  See Charlot v. Ecolab, Inc., 97 F. Supp. 3d at 69 (explaining "[i]n this case,

[defendant] admits it received notice of the amended pleading on April 15, 2014, and [defendant]

contends that the date of notice is the 'appropriate' date for calculating relation back; therefore,

the Court recommends using that date rather than May 5, 2014, the date the Named Plaintiffs

initiated the motion to amend"); see also Muwwakkil v. Hoke, 107 F.3d 3, 1997 WL 76871, at

---

[11] In seeking to amend his Complaint, plaintiff initially submitted a letter motion on August 12, 2022. ("Pl.'s Aug. 12, 2022 Ltr."). (ECF No. 19).  Since defendants indicated that they would not consent to the filing of the Amended Complaint, this Court Ordered plaintiff to file a formal motion.  In his Memorandum in Support of the Motion to Amend, plaintiff does not explicitly address the statute of limitations issue, except to note that he discovered the FLSA and NYLL violations "[i]n the early phases of discovery" and "advised Defendant's counsel of same," by sharing a proposed amended complaint with defendants' counsel during settlement discussions.  (Pl.'s Mem. at 2).  In response, defendants note that at the time plaintiff filed his Memorandum of Law, no discovery materials had been exchanged by either side (Affirmation of Scott Himes, Esq., dated September 9, 2022 ("Himes Aff.") ¶ 5); thus, it is unclear what plaintiff's counsel is referring to when he states that he discovered the wage and hour violations during "the early phases of discovery."  (See Defs.' Mem. at 14 n.2).

*3 (2d Cir. Feb. 21, 1997) (unpublished decision) (considering whether a *pro se* plaintiff's letter submission seeking leave to file a complaint for damages "constitute[d] a pleading [as per Federal Rule of Civil Procedure 8(a)] sufficient to toll the statute of limitations"); accord Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 188–89 (6th Cir. 2008) (holding that the five equitable tolling factors favor tolling the statute of limitations so that the commencement of the new claims was the date defendants were put on notice by plaintiff filing a motion for leave to file an amended complaint).

Defendants concede that they were on notice of the plaintiff's intention to bring the FLSA claims prior to the actual filing date of the motion to amend. Specifically, defendants say they were first put on notice of plaintiff's FLSA claims on February 16, 2022, when Mr. Himes, defendants' counsel, received an email from plaintiff's counsel, attaching an earlier version of a proposed amended complaint.[12]  (Himes Aff. ¶ 3).  Plaintiff has not disputed Mr. Himes' sworn Affirmation that he received an email on February 16, 2022, attaching a proposed amended complaint.  (Id. ¶ 3, Ex. 1).  Nor does plaintiff dispute that this was the date when defendants' counsel first received notice of the claims in the Proposed Amended Complaint.  (Id. ¶ 4).

Therefore, given that defendants are relying on February 16, 2022 as the date they first received notice of the FLSA claims and plaintiff does not dispute that this is when the Proposed Amended Complaint was sent to defendants,[13] this Court respectfully recommends that February

---

[12] It appears that the version of the proposed amended complaint sent to defendants on February 16, 2022 (ECF No. 22-2) is slightly different than the version filed with the Court on August 23, 2022.  (ECF No. 21-2). While the February 16, 2022 version had FLSA and NYLL claims, the February 16, 2022 version failed to contain either the Twelfth Count, intentional infliction of severe emotional distress, or the Fourteenth Count, tortious interference with prospective business relations, that are in the August 23, 2022 version now before the Court.  The February 2022 proposed amended complaint also did not contain allegations related to conduct in 2022.

[13] Plaintiff seeks to extend the date back to the date of the filing of the initial Complaint.  Plaintiff's "relation-back theory" is addressed infra at Section B.3.b.

16, 2022 be considered the starting point for measuring the statute of limitations for plaintiffs' FLSA claims.

Defendants contend that plaintiff's claims for unpaid wages and unpaid overtime under the FLSA accrued as of February 14, 2019 – the last date of his employment; therefore, under a two-year statute of limitations, his time for filing his FLSA claims would have expired as of February 14, 2021. (Defs.' Mem. at 7). Thus, since the Proposed Amended Complaint was not received until February 16, 2022, defendants contend that plaintiff's FLSA claims are time-barred and therefore futile. (Id.) According to defendants, even if plaintiff has alleged a willful violation, under a three-year statute of limitations period, plaintiff's time to bring his FLSA claims expired on February 14, 2022, two days before defendants received notice of the proposed claims. (Id.; see id. n.1).

However, as previously explained, according to the statute, FLSA claims accrue on the payday *after* the end of the pay period in which the FLSA has been violated. See Decraene v. Neuhaus (U.S.A.), Inc., 2005 WL 1330761, at *8 (rejecting defendants' argument that the statute of limitations ran from plaintiff's last day of work "since the cause of action accrues when an employee is due to be paid, [and plaintiff's] final pay day presumably occurred on some date after" plaintiff's last day of work). Although plaintiff does not explicitly raise this argument in his motion papers and neither party has set forth the date on which plaintiff received his last paycheck following his termination, the Proposed Amended Complaint does allege that, during his employment, he was paid every two weeks "until on or about February 25, 2019." (Prop. Am. Compl. ¶¶ 58–59). Despite the fact that plaintiff's letter and motion in support of his Proposed Amended Complaint offer little to no useful discussion of the date of accrual or of defendants' statute of limitations argument, the Court must construe plaintiff's Proposed

Amended Complaint in the light most favorable to plaintiff at this stage. Reading the Proposed Amended Complaint to allege that plaintiff was only paid every two weeks "until on or about February 25, 2019," suggests that the date of accrual for the last two-week period that he worked was February 25, 2019. If that is the case, then the two-year statute of limitations applicable to a non-willful violation would still have run by February 25, 2021 and those claims would be time-barred.

However, if plaintiff could prove that defendants violated the FLSA "willfully," then plaintiff would still have a viable FLSA claim up to February 25, 2022. (See, e.g., id. ¶¶ 87, 90, 92). Using February 16, 2022 as the date defendants were put on notice of the proposed amendments, and crediting plaintiff with a three-year statute of limitations, plaintiff would be able to pursue wage violation claims under the FLSA for the pay period that closed on February 25, 2019.

If the Proposed Amended Complaint is construed to allege that plaintiff's last biweekly pay period ended on February 25, 2019, that would suggest that plaintiff's prior pay date was on February 11, 2019. Using the February 16, 2022 date as the date defendants first became aware of these claims, any claims that accrued prior to February 11, 2019 would be time-barred under either a two-year or three-statute of limitations. Unless the new FLSA claims are found to relate back to the date of the Original Complaint, at best, plaintiff may have claims for willful violations of the FLSA for any work performed between February 11, 2019 and February 14, 2019.[14] Any claim for work performed prior to the claims that accrued on February 25, 2019 would be time-barred and its inclusion in the Proposed Amended Complaint would prove

---

[14] Of course, because the Court has virtually no information regarding what was included in plaintiff's final paycheck or what period of time was covered by the final pay period, if there was a gap between the last day of work in a pay period and the subsequent pay day, then presumably the period of work for which plaintiff still has timely FLSA claims could be slightly larger.

futile.[15]  However, assuming plaintiff has alleged a willful violation of the FLSA for the four-day period of work performed between February 11, 2019 and February 14, 2019, plaintiff's FLSA claim is not futile and thus, it is respectfully recommended that the motion to amend to add this claim should not be denied on grounds of futility.

b)  <u>Relation Back Under Federal Rule of Civil Procedure 15(c)(1)(C)</u>

Plaintiff invokes the relation-back theory in an effort to salvage the rest of his FLSA claims.  Under the relation-back theory, a plaintiff's claim may relate back to the date of the initial filing of the complaint as long as the claim arises out of the same conduct alleged in the initial pleading and certain other conditions have been met.  Plaintiff argues that even though he did not move to add the FLSA claims until after the expiration of the statute of limitations, the Court should allow his FLSA claims to relate back to August 15, 2019, the date the original Verified Complaint was filed.

Rule 15(c)(1) of the Federal Rule of Civil Procedure provides, in relevant part, that in order for an amended pleading to relate back, the following conditions must be met:  A) "the law that provides the applicable statute of limitations allows relation back;" or B) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(A), (B).[16]

---

[15] Defendants note in a footnote that even under their assessment of the statute of limitation a "two day 'window'" might apply but "a claim for two days of unpaid compensation not barred by the statute of limitations would be *de minimis*; and if possibly viable, it would be readily resolved by a Rule 68 offer of judgment or the tender of payment covering the two days."  (Defs.' Mem. at 7 n.1).  Whether or not a claim is "*de minimis*" or could be resolved through an offer of judgment are not considerations relevant to the Court's inquiry.

[16] Rule 15(c)(1)(C) relates to amendments changing parties or the naming of the party against whom claims are being asserted and, as such, is not relevant to the question before the Court.

Since the FLSA does not explicitly provide for relation back,[17] the Court looks to see if plaintiff has satisfied the  relevant conditions for relation back under Rule 15(c)(1)(B).  A claim arises out of the same series of transactions or occurrences when the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979) (quoting Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978)); see also Ardoff v. Weber, 332 F.R.D. 467, 480 (S.D.N.Y. 2019) (quoting Kalie v. Bank of Am. Corp., 297 F.R.D. 552, 557 (S.D.N.Y. 2013)).  Whether claims arise out of the same series of transactions "depend[s] not so much []on the immediateness of their connection as upon their logical relationship."  Ardoff v. Weber, 332 F.R.D. at 480 (quoting Moore v. N.Y. Cotton Exch., 270 U.S. 593, 610 (1926)).  As the Second Circuit noted in Stevelman v. Alias Research Inc., "[u]nder Fed. R. Civ. P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'"  174 F.3d 79, 86–87 (2d Cir. 1999) ((quoting Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir. 1973)); see also Parker v. Israel Disc. Bank of N.Y., Inc., No. 21 CV 7196, 2022 WL 16833626, at *3 (S.D.N.Y. Nov. 9, 2022) (same); Charlot v. Ecolab, Inc., 97 F. Supp. 3d  at 71 (explaining "[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide") (quoting United States v. Baylor Univ. Med. Ctr., 469 F. 3d 263, 270 (2d Cir. 2006)).

---

[17] See Defs.' Mem. at 7 (arguing "[t]he three-year period under FLSA is a state of repose that cannot be extended) (quoting Cortese v. Skansa Koch, Inc., No. 20 CV 1632, 2021 WL 429971, at *15 (S.D.N.Y. Feb. 8, 2021)).

In <u>Bilal-Edwards v. United Plan Organization</u>, the court rejected the plaintiff's arguments that his proposed, time-barred FLSA claims could relate back to the filing of the original complaint, which asserted claims of discrimination based on age, retaliation for whistleblowing, and tortious conduct.  15 F. Supp. 3d 1, 17–18 (D.D.C. 2013).  Although the original claims, like here, stemmed from plaintiff's employment relationship, the court found that none of the original claims "involved the plaintiff's compensation or right to overtime compensation."  <u>Id.</u> at 18. Accordingly, the court denied the motion to add the FLSA claims as futile.  <u>Id.</u>

In an even closer case, this court, in <u>Charlot v. Ecolab, Inc.</u>, denied in part a motion to amend where the plaintiff sought to add additional plaintiffs and proposed state law wage and hour claims.  97 F. Supp. 3d at 45.  Even though the initial complaint alleged FLSA claims that largely "mirror[ed]" the state law claims, the court was not persuaded that the original claims sufficiently gave defendants "fair notice" because the state law standards varied from the FLSA standards and required defendants to analyze the scope of their potential liability independently of liability under the federal statute.  <u>Id.</u> at 54, 73.  Thus, the court declined to apply the relation-back doctrine under Rule 15(c)(1)(B) under the circumstances.  <u>Id.</u> at 73–74.

Here, plaintiff's initial Verified Complaint and his Amended state court Complaint allege claims based upon defendants' conduct leading to plaintiff's arrest and social media postings accusing plaintiff of theft from Trax.  The causes of action set forth in these initial pleadings for false arrest, malicious prosecution, intentional and negligent infliction of emotional distress, defamation, deceptive business practices, and even the alleged federal civil rights violation, do not implicate the terms and conditions of plaintiff's employment insofar as his wages and pay are now at issue.  There is nothing in the prior pleadings that mentions his hours worked or pay received; there is no mention of tips, notices, or even defendants' general employment practices

that would provide notice that plaintiff was going to bring wage and hour claims against defendants. The only thing the claims have in common is that plaintiff was employed by defendants. That alone is not sufficient.

Accordingly, it is respectfully recommended that plaintiff's motion for relation back of the FLSA claims to the date of the Verified Complaint be denied. As a consequence, claims under the FLSA for work performed prior to February 11, 2019 and which accrued prior to February 25, 2019 would be barred by the statute of limitations.

4) Plaintiff's NYLL Claims

Since the NYLL has a six-year statute of limitations, N.Y. Lab. Law §§ 198(3), 663(3), plaintiff's wage and hour claims set forth in Causes of Action Three through Nine of the Proposed Amended Complaint are not time-barred. However, defendants argue that the court lacks subject matter jurisdiction over these claims. (Defs.' Mem. at 12). Defendants contend that if the FLSA claims are not allowed to proceed, there is no longer a basis to exercise supplemental jurisdiction over the NYLL claims because those claims are wholly unrelated to the Section 1983 civil rights claim which conferred federal jurisdiction in the Amended Complaint. (Id. at 12–13). However, as previously discussed, some of plaintiff's FLSA claims are timely, so plaintiff does have a basis for federal jurisdiction that is related to his NYLL claims.

Title 28, United States Code, Section 1367 provides the statutory basis upon which federal district courts may exercise subject matter jurisdiction over state law claims that could not ordinarily be brought in federal court. The statute provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

19

> jurisdiction over all other claims that are so related to
> claims in the action within such original jurisdiction that
> they form part of the same case or controversy under
> Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The court may decline to exercise supplemental jurisdiction, among other

reasons, if:  (1) "the claim raises a novel or complex issue of State law," or (2) "the claim

substantially predominates over the claim or claims over which the district court has original

jurisdiction."  28 U.S.C. §1367(c)(1), (2).  Prior to the codification of Section 1367, the Supreme

Court, in United Mine Workers v. Gibbs, held that the exercise of supplemental jurisdiction is

discretionary, and courts should "consider and weigh in each case, at every stage of the litigation,

the values of judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v.

Cohill, 484 U.S. 343, 350 (1988) (describing the holding of United Mine Workers v. Gibbs, 383

U.S. 715 (1966)).[18]

 The Second Circuit has explained that "disputes are part of the 'same case or

controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'"

Achtman v. Kirby McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting

Promisel v. First Am. Artificial Flowers Inc., 943 F.2d 251, 254 (2d Cir. 1991)).  The court in

Achtman v. Kirby McInerney & Squire, LLP explained that the Second Circuit, in evaluating

whether claims arise from a common nucleus of operative fact, has "traditionally asked whether

'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal

claim necessarily brought the facts underlying the state claim before the court.'"  Id. (quoting

Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000)); cf. Jones v.

Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (explaining in the context of assessing

---

[18] Although Gibbs was decided prior to the codification of Section 1367, "the 'common nucleus' test [set out in Gibbs] was retained by nearly all the Circuits to interpret the statute's 'case or controversy' language." Achtman v. Kirby McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006).

whether counterclaims were compulsory or permissive that the standard of "aris[ing] out of the transaction or occurrence" is met when there is a "'logical relationship' between the counterclaim and the main claim," meaning that the "essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit") (internal citations omitted) (quoting United States v. Aquavella, 615 F.2d at 22, and Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000)).

   Plaintiff does not mention supplemental jurisdiction in any of his submissions. Nonetheless, his FLSA and NYLL claims clearly arise out of the same nucleus of common facts – namely, whether during the course of plaintiff's employment, defendants complied with federal and state laws regulating plaintiff's compensation.  See Humphrey v. Rav Investigative & Sec. Servs. Ltd., 169 F. Supp. 3d 489, 503 (S.D.N.Y. 2016) (holding "[a]s to supplemental jurisdiction, [plaintiff's] § 193 and FLSA claims 'form part of the same claim or controversy' 28 U.S.C. § 1367(a), as they 'clearly derive from . . . a common nucleus of operative facts since they arise out of the same compensation policies and practices'") (quoting Shariar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011))).  Here, the facts underlying the FLSA claims would "necessarily [bring] the facts underlying the state claim[s] before the court." Achtman v. Kirby McInerney & Squire, LLP, 464 F.3d at 335 (quoting Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d at 704).

   The Court is also mindful that the question of supplemental jurisdiction is one to be revisited at every stage of the litigation.  Thus, while it is respectfully recommended that the court exercise supplemental jurisdiction over the NYLL claims, defendants may revisit their objections at a later stage of the litigation.

5) <u>Intentional Infliction of Emotional Distress Claim</u>

Plaintiff seeks to amend to add an intentional infliction of emotional distress claim. This claim was alleged as part of plaintiff's original Verified Complaint before the state court and was dismissed by the state court judge, who concluded that "[t]he conduct alleged by the plaintiff against the defendants does not rise to the type of extreme and outrageous conduct required for a cause of action for intentional infliction of emotional distress." (Order, dated May 15, 2020, ECF No. 1-2, at 4). Defendants object to the addition of a virtually identical claim in the Proposed Amended Complaint as futile under the doctrines of law of the case and res judicata.[19] (Defs.' Mem. at 11).

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe, emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Chrimarev v. TD Waterhouse Inv. Servs. Inc.</u>, 280 F. Supp. 2d 208, 214 (S.D.N.Y. Sept. 4, 2003) (quoting <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (1993)). Most intentional infliction of emotional distress claims turn and fail on the rigorous outrageousness component. <u>See</u> <u>Howell v. New York Post Co.</u>, 81 N.Y.2d at 121–22, 612 N.E.2d at 702, 596 N.Y.S.2d at 353. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Id.</u>

---

[19] The state court dismissed the intentional infliction of emotional distress claim for failure to state a cause of action pursuant to N.Y. C.P.L.R. 3211(a)(7). Although defendants argue that the dismissal should be treated as having a res judicata effect (Defs.' Mem. at 11), unlike dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissals under N.Y. C.P.L.R. 3211(a)(7) are not final judgements on the merits. <u>DDR Const. Servs., Inc. v. Siemens Indus., Inc.</u>, 770 F. Supp. 2d. 627, 646 (S.D.N.Y. 2011) (explaining [u]nder New York law, a dismissal pursuant to N.Y. C.P.L.R.3 211(a)(7), for failure to state a cause of action, is presumptively not on [the merits of a case] and lacks <u>res judicata</u> effect"); <u>see also</u> <u>id.</u> at 363 n.13.

(quoting <u>Murphy v. American Home Prods. Corp.</u>, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461, N.Y.S.2d 232, 236 (1983), <u>superseded by statute on other grounds</u>, N.Y. Lab Law § 740).

Plaintiff again failed to address defendants' arguments and has provided no basis on which this Court can find that the claim as pleaded in the Proposed Amended Complaint is sufficiently different to warrant revisiting the state court's conclusion that the conduct as alleged did not state a valid claim for intentional infliction of emotional distress. The Proposed Amended Complaint adds just one additional factual allegation to support plaintiff's claim: that "[d]efendants have repeatedly posted videos on social media and other postings repeating these outlandish and unfounded lies coupled with a mix of threats and bravado like threatening to post Plaintiffs [sic] wedding pictures." (Prop. Am. Compl. ¶ 137). This one added allegation – invoking the words "outlandish and unfounded" and mentioning the wedding pictures – does not alter the conclusion, as expressed by the state court, that plaintiff has not shown the "extreme and outrageous" conduct necessary to plead a plausible claim of intentional infliction of emotional distress. <u>Compare</u> <u>Lydeatte v. Bronx Overall Econ. Dev. Corp.</u>, No. 00 CV 5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (explaining that "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of infliction of emotional distress because the conduct alleged is not sufficiently outrageous"). Thus, it is respectfully recommended that plaintiff's motion to amend to add this claim be denied.

6) <u>Tortious Interference with Prospective Business Relations</u>

Defendants raise a number of objections to plaintiff's proposed claim for tortious interference with prospective business relations. (Defs.' Mem. at 11–12). Plaintiff alleges in the Fourteenth Cause of Action that "Defendants directly interfered with the prospective business

relationship between Plaintiffs and various prospective employers of Plaintiffs [sic]." (Prop. Am. Compl. ¶ 174). Plaintiff alleges that defendants' actions in calling him a thief "kill[ed] Plaintiffs' [sic] prospects and hurt him and besmirch[ed] Plaintiffs' [sic] reputation in order to make it impossible for him to [get] or secure other opportunities." (Id. ¶ 175). Plaintiff alleges that defendants acted out of "malice and/or spite," that their "interference" amounted to "extreme and unfair economic pressure," that forced plaintiff to leave the industry, because no one will do business with plaintiff for fear of damaging their own brands. (Id. ¶¶ 176–80). He alleges that he had "business relationships with many in the Hip Hop jewelry niche market," and that defendants knew he was "in talks with industry players." (Id. ¶¶ 182–83). As a result of defendants' actions, plaintiff claims that he "lost prospective economic relationships." (Id. ¶ 188).

In order to bring a claim of tortious interference with prospective business relations, a plaintiff must allege that but for defendants' malicious conduct, a contract would have been entered into. Am. Preferred Prescription, Inc. v. Health Mgmt., Inc., 252 A.D.2d 414, 418, 678 N.Y.S.2d 1, 5 (1st Dep't 1998). The "tort of interference with business relations applies to those situations where the third party would have entered into a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." WFB Telecomm., Inc. v. NYNEX Corp., 188 A.D.2d 257, 257, 590 N.Y.S. 2d 460, 461 (1st Dep't 1992). To be liable, defendants must have acted "out of malice" or "employed 'wrongful means,'" meaning defendants employed "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Am. Preferred Prescription, Inc. v. Health Mgmt., Inc., 252 A.D.2d at 418, 678 N.Y.S.2d at 5 (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 428 N.Y.S. 2d 628, 632, 406 N.E. 2d 445, 449 (N.Y. 1980)); see also

In re Refco Inc. Sec. Litig., 826 F. Supp. 2d 478, 520–21 (S.D.N.Y. 2011) (explaining that in a tortious interference of prospective business relations claim, the interference "must be direct" and "defendant must target some activities toward the third party and convince the third party not to enter into a business relationship with the plaintiff").  Where the plaintiff has only raised conclusory allegations, state courts have dismissed, finding the cause of action not well-pleaded. Hersh v. Cohen, 131 A.D.2d 1117, 1119, 16 N.Y.S. 3d 606, 609 (2d Dep't 2015) (affirming dismissal of claim of tortious interference with prospective business relations despite allegations that defendants set up websites, contacted media outlets, urged teenagers to protest outside plaintiff's home, harassed plaintiff's business associates, and sent emails implying that plaintiff was a child abuser leading to plaintiff's termination).

Here, plaintiff has failed to address defendants' arguments as to the sufficiency of this claim.  However, a review of the Proposed Amended Complaint demonstrates that while plaintiff alludes to business relationships in the Hip Hop jewelry niche and involvement in talks with "industry players," he has failed to identify any particular third party with whom he would have entered into a contract.  There is no allegation that plaintiff had identifiable business prospects or would have entered into a specific contract or relationship with anyone in particular absent defendants' conduct.  Further, there is no allegation that defendants "targeted" his conduct at anyone in particular.  As currently pleaded, plaintiff's interference with prospective business relations fails to state a plausible claim sufficient to survive a motion to dismiss under Rule 12(b)(6).  Accordingly, it is respectfully recommended that plaintiff's motion to amend to add this claim be denied.

7)  <u>Claims which Post-Date the Original Complaint</u>

Plaintiff proposes adding to his libel claim the allegation that defendant continues to post disparaging videos and comments on social media in February, March, and May of 2022, after the case was commenced.  (Prop. Am. Compl. ¶ 201).  Defendants have not specifically addressed this amendment in their opposition brief despite arguing that plaintiff's motion should be denied in its entirety.  These claims are clearly related to those already in the operative Complaint.  The Court finds that even though the addition of these new factual allegations will expand the scope of discovery beyond what was initially alleged in the Complaint, there is no undue prejudice that would result to defendants, particularly since discovery is still at a relatively early stage and defendants have been on notice of plaintiff's complaints about defendants' continued conduct.  <u>See</u> <u>Lin v. Toyo Food, Inc.</u>, No. 12 CV 7392, 2016 WL 4502040, at *3 (S.D.N.Y. Aug. 26, 2016) (holding that defendants did not establish that plaintiffs' proposed amendments would cause undue prejudice or delay when "no motions for summary judgment ha[d] been filed, nor ha[d] a trial date been set").

8)  <u>Prejudice</u>

Plaintiff contends that defendants will not suffer undue prejudice from the filing of the Proposed Amended Complaint because:  1) they were apprised of the potential additional causes of action early on but plaintiff refrained from amending because defendants' counsel assured them that "settlement was plausible;" 2) defendants were on notice of the claims and "in control of their conduct subsequent to the commencement of this suit;" 3) the new claims are being added before the close of discovery and within the time set out in the scheduling order for filing

amendments;[20] 4) there have been no depositions taken; and 5) the newly-alleged facts were already "well-known" to defendants and in their possession.  (Pl.'s Mem. at 2).

Defendants argue that the addition of wage and hour claims will expand the scope of discovery and eventually trial, making it "unwieldy."  (Defs.' Mem. at 14 n.2).  Defendants also contest that plaintiffs unduly delayed bringing these claims and they should have raised these claims in the original complaint filed in August 2019.  (Id.).  Although plaintiff's counsel explains that he learned of these FLSA claims through discovery (Pl.'s Mem. at 2), defendants argue such an assertion is "inexplicable" because no exchange of discovery had yet occurred. (Defs.' Mem. at 14 n.2).

For the purpose of determining whether leave to amend shall be denied due to prejudice to the nonmoving party, courts consider whether the amendment "seeks to add a new claim derived from a different set of facts of which the original complaint did not provide adequate notice," Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (citing Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)), whether the amendment would "significantly delay the resolution of the dispute," whether the amendment or defenses would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial," or whether the new claim would "prevent the plaintiff from bringing a timely action in another jurisdiction."  Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); see also Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000) (same); Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (same).  The inquiry involves balancing the potential prejudice to the non-moving party against the disadvantage the moving party would face if the motion to amend were denied.  Agerbrink v.

_____

[20] Although defendants assert that the scheduling order is actually silent and does not set a date for amendments to the pleadings (Defs.' Mem. at 14),  no scheduling order has been filed on the docket by the parties.

Model Serv. LLC, 155 F. Supp. 3d at 454 (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)). In addition, "[t]he non-moving party bears the burden of demonstrating that "substantial prejudice would result if the proposed amendment were granted."" Id. (quoting Oneida Indian Nation of N.Y. State v. County of Oneida, 199 F.R.D. at 77).

Defendants are correct that the addition of wage and hour claims will expand the scope of discovery and eventually trial. (Defs.' Mem. at 14 n.2). However, "the need for new discovery is not sufficient to constitute undue prejudice on its own." Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (quoting Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 100 (S.D.N.Y. 2010)). Such a concern is particularly unavailing where, as here, discovery is in its early phases. As to the manageability of eventual trial, the Court has a wide array of tools with which it can mitigate defendants' concerns.

More importantly, however, defendants argue "if the new FLSA claims are permitted, marshalling the evidence, particularly evidence Trax would need, will be problematic, and important evidence might no longer be available. That is particularly so because employers by law are not required to preserve payroll and other employment records longer than three years. 29 C.F.R. § 516.5." (Defs.' Mem. at 14 n.2). However, notwithstanding the fact that the NYLL requires defendants to maintain their payroll records for six years, see N.Y. Lab. Law § 195, once defendants had notice of the Proposed Amended Complaint in February 2022, defendants should have instituted a litigation hold and continued to maintain those records related to plaintiff's wage and hour claims. Moreover, defendants only claim that relevant discovery *might* no longer be available – such speculation is insufficient to demonstrate prejudice. This argument therefore too is unavailing.

Defendants also argue that plaintiffs unduly delayed bringing these claims and they should have raised these claims in August 2019.  (Defs.' Mem. at 14 n.2).  Although plaintiff's counsel explains that he learned of these FLSA claims through discovery (Pl.'s Mem. at 2), defendants argue such an assertion is "inexplicable" because no exchange of discovery had yet occurred.  (Defs.' Mem. at 14 n.2).  While plaintiff's attorneys arguably should have noted these claims earlier, once the current attorney appeared on September 27, 2021, he moved to amend the complaint by December 20, 2021, and raised the issue of further amendment at the initial conference held with the Court on February 10, 2022.  (See Not. of Removal ¶ 8; Minute Entry dated February 11, 2022).  Plaintiff's counsel then sent defendants a Proposed Amended Complaint within a week.  In light of the specific circumstances of this case, the Court finds that plaintiff's counsel did not unduly delay amendment.  Compare Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir. 1986) (explaining "amendments seeking to insert or correct matters about which parties should have known but did not know are plainly within the scope of Rule 15(a)"). Even further, although defendants' lack of notice of these new claims at the time of the Original Complaint weighs in favor of finding prejudice, the prejudice to plaintiff from denying the motion to amend would be greater because the statute of limitations would now completely bar plaintiff's FLSA claims if forced to commence a new action.

<u>CONCLUSION</u>

Accordingly, the Court respectfully recommends that plaintiff's motion to amend be granted in part and denied in part.  Specifically, the Court recommends that:

- Plaintiff's motion to add proposed FLSA claims accruing as of the February 25, 2019 pay period be granted;

- Plaintiff's motion to add proposed FLSA claims which accrued prior to the

February 25, 2019 pay period not be granted because the claims are time-barred and their addition would be futile;

- Plaintiff's motion to add NYLL claims which accrued six years prior to February 25, 2022 be granted;

- Plaintiff's motion to add NYLL claims which accrued more than six years prior to the February 25, 2022 pay period be denied as time-barred;

- Plaintiff's motion to add a claim for intentional infliction of severe emotional harm be denied;

- Plaintiff's motion to add a claim for tortious interference with prospective business relations be denied;

- Plaintiff's motion to add additional allegations relating to defendants' libelous activities in 2022 be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: February 4, 2023
      Brooklyn, New York

*Cheryl L. Pollak*
   Cheryl L. Pollak
   United States Magistrate Judge
   Eastern District of New York