UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LUCIANO SANTIAGO,

                     Plaintiff,

        -against-

MAKSUD TRAX AGADJANI and TRAX
NYC CORP.,

                    Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21 CV 7090 (KAM) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 15, 2019, plaintiff Luciano Santiago commenced this action in New York

State Supreme Court, Queens County, against defendants Maksud Trax Agadjani ("Mr.

Agadjani")[1] and Trax NYC Corp. ("Trax"), alleging that defendants falsely reported to the police

that Santiago had stolen Trax merchandise, causing Santiago to be arrested and charged with

grand larceny in the third degree ("Verified Complaint").  (Compl.[2]; see also Not. of Removal[3]

¶¶ 1, 3).  The case was removed to this Court on December 22, 2021, pursuant to 28 U.S.C. §§

1331, 1441, and 1446.  (Not. of Removal).

Currently pending before this Court is plaintiff's motion to enforce the settlement

purportedly reached between the parties in November 2023 (the "Motion") (ECF No. 44), which

was referred to this Court for report and recommendation (Electronic Order, dated Feb. 27,

2024).  On March 18, 2024, Mr. Agadjani, proceeding *pro se*, filed a "Counter Motion to Reject

---

[1] According to defendants, although he was improperly named "Maksud Trax Agadjani" in the Verified
Complaint, Mr. Agadjani's full name is Maksud Agadjani.  (ECF No. 22 at 1).
[2] Citations to "Compl." refer to plaintiff's Verified Complaint, filed in New York State Supreme Court,
Queens County on August 15, 2019.  See Luciano Santiago v. Maksud Trax Agadjani and Trax NYC Corp., Index
No. 714118/2019 (the "State Court Action").  (ECF No. 1-1).
[3] Citations to "Not. of Removal" refer to the defendants' Notice of Removal filed in this court on December
22, 2021.  (ECF No. 1).

Proposed Settlement and Continue Litigation" (the "Countermotion").  (ECF No. 45).[4]  Having considered the parties' arguments, and for the reasons set forth below, the Court respectfully recommends that the district court GRANT in part and DENY in part the Motion, and DENY the Countermotion, in effect treating the written settlement agreement executed by plaintiff as the parties' jointly proposed settlement agreement for purposes of the settlement approval process mandated by Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  The Court further recommends that the district court grant plaintiff leave to file a formal motion for approval of the settlement agreement as fair and reasonable pursuant to Cheeks, and for approval of an award of attorney's fees and costs.

## BACKGROUND

On August 15, 2019, plaintiff Santiago initially brought suit against Mr. Agadjani and Trax in New York State Supreme Court, raising three causes of action:  1) false arrest; 2) intentional infliction of emotional distress;[5] and 3) prima facie tort, based on plaintiff's claim that or about February 5, 2019, inside 604 West 47th Street, New York, N.Y., Mr. Agadjani reported to the New York City Police Department that plaintiff had stolen certain property from defendants, a claim that plaintiff alleged was false.  (Compl. ¶ 8).  Although plaintiff was thereafter arrested and charged with grand larceny in the third degree, the criminal complaint was dismissed in New York County Criminal Court on or about May 8, 2019.  (Id. ¶¶ 10).

On December 20, 2021, plaintiff filed an Amended Complaint in the State Court Action, adding a variety of claims, including a claim of false imprisonment under 42 U.S.C. § 1983.

---

[4] The Court refers to Mr. Agadjani's filing as a countermotion because it was filed as such.  However, what Mr. Agadjani filed is, in effect, nothing more than an opposition to plaintiff's Motion.  Unlike an ordinary countermotion that seeks something in addition to the rejection of the underlying motion, Mr. Agadjani only asks that the Court "reject the proposed settlement . . . and . . . continue litigation," i.e., deny plaintiff's Motion.

[5] This claim was dismissed by the State Court.

(Am. Compl.[6]).  The case was removed to this Court on December 22, 2021, pursuant to 28

U.S.C. §§ 1441 and 1446(b)(3), based on the newly added federal claim brought pursuant to 42

U.S.C. § 1983.  (Not. of Removal).

On August 23, 2022, plaintiff, who also alleged that he had been employed by

defendants, filed a motion to further amend the Complaint, seeking to add claims under the wage

and hour provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the

New York Labor Law ("NYLL") §§ 190 et seq. and §§ 650 et seq.  (Id. at 2).  He also sought to

add a claim for intentional infliction of severe emotional harm, tortious interference with

prospective business relations, and additional allegations relating to defendants' libelous actions

in 2022.  This Court then issued a Report and Recommendation on February 27, 2023,

recommending that the district court grant in part and deny in part the proposed amendments.

(ECF No. 25).  With respect to his proposed wage and hour claims, this Court found that any

claims that had accrued on February 25, 2019, would be time barred and futile, but

recommended that the district court allow FLSA claims for a four-day period of work performed

between February 11, 2019, and February 14, 2019.   (Id.)  This Court also recommended that

the district court allow an amendment to add wage and hour claims under NYLL §§ 198(3),

663(3), and to add additional allegations relating to defendants' libelous activities in 2022.  (Id.)

However, the Court recommended that the district court deny plaintiff's motion to add claims for

tortious interference with prospective business relations and intentional infliction of emotional

distress.  (Id.)  The district court then adopted the Report and Recommendation in full.

(Electronic Order, dated Feb. 27, 2023)

---

[6] Citations to "Am. Compl." refer to the Amended Complaint filed in Supreme Court, Queens County, on December 20, 2021.  (ECF No. 1-3).

On October 31, 2023, the parties appeared before the undersigned for a settlement conference.  Defendants were represented at the conference by Scott Himes, Esq. ("Mr. Himes"), who was their attorney at the time.  (Minute Entry, dated Nov. 1, 2023).  During the conference, the parties reached a settlement in principle and agreed that they would "[w]ork on [a] payment plan and draft[] settlement papers," as noted in the Court's minute entry.  (Id.)  The parties were instructed to file their settlement papers by November 17, 2023.  (Id.)  As noted by the parties elsewhere, because the settlement would include claims under the FLSA in addition to plaintiff's various non-FLSA claims and the defendants' counterclaim, the parties would need to seek settlement approval pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199.  (See ECF No. 36).

On November 17, 2023, Mr. Himes submitted a letter to the Court stating that counsel for both parties were "continuing their discussions to reach a mutually acceptable payment plan," that they had "prepared draft settlement papers," and that they "expect[ed] to submit the necessary settlement papers . . . promptly upon resolving the final terms."  (ECF No. 35).  Mr. Himes, writing on behalf of both parties, requested additional time to submit the paperwork, which the Court granted, directing them to finalize the paperwork or submit a status report by November 29, 2023.  (Electronic Order, dated Nov. 17, 2023).

On November 29, 2023, Mr. Himes filed another letter on behalf of both parties, explaining that the parties had "agreed upon the terms of settlement" and that a written "settlement agreement [was] being finalized for execution by the parties."  (ECF No. 36).  Mr. Himes stated that the parties "hope[d] to have that done shortly, say within one week."  (Id.)  He requested that the parties be permitted to submit the settlement agreement for the Court's consideration "*in camera*, rather than by ECF filing," arguing that "all interests are best served"

4

by doing so.  (Id.)  This Court issued an Order explaining that "[t]he parties need to show good cause as to why this Court should permit the filing of the proposed settlement agreement under seal," and directed them to file an explanatory letter by December 11, 2023.  (Electronic Order, dated Dec. 4, 2023).

In a letter filed December 11, 2023, the parties sought permission to brief the sealing question and the issue of settlement approval simultaneously, and they requested an extension of time to do so.  (ECF No. 37).  At the time that they made this request, the parties had finalized a settlement agreement, which plaintiff had signed; however, plaintiff's counsel was "still awaiting the Defendants' execution of the settlement agreement."  (Id.)  The Court rejected the parties' request to brief the sealing issue at the same time that they submitted their Cheeks motion under seal for consideration by the Court, instructing them instead to first file a "joint motion for leave to electronically file under seal the forthcoming Cheeks motion, proposed settlement agreement, and, if necessary, other supporting documents," by December 22, 2023.  (Electronic Order, dated Dec. 14, 2023).

On December 21, 2023, one day before the joint sealing motion was due, Mr. Himes filed a motion seeking to withdraw from further representation of the defendants, citing a serious breakdown in the attorney-client relationship, including that Mr. Agadjani, the president and owner of Trax, had discharged the firm from representing either defendant in this action.  (ECF Nos. 38, 38-1).  Plaintiff filed a letter in opposition the next day, arguing that "[a]fter many months, days and hours of serious legal work of the attorneys of both parties, the defendant Maksud Agadjani now unreasonably seeks to terminate his counsel and proceed [*pro se*]."  (ECF No. 39).  Plaintiff therefore requested an in-person hearing to discuss the matter.  Plaintiff also attached to that letter a copy of the parties' proposed settlement agreement, which plaintiff had

executed on December 7th (the "Agreement") (ECF No. 39-1), as well as a copy of a letter motion that plaintiff's counsel purportedly "wrote jointly with counsel for defendants" and copies of the confessions of judgment that defendants were to sign (ECF No. 39-2[7]; see also ECF No. 39 at 1 (claiming that "[j]ust before Thanksgiving," counsel for both parties had "drafted together the settlement agreement, the Cheek's agreement," i.e., Cheeks motion for settlement approval, "and [the] confession of judgement[]")).

This Court then held a hearing on February 7, 2024, at which time the Court granted Mr. Himes' motion to withdraw.  (ECF No. 43; see also Minute Entry, dated Feb. 7, 2024; Hr'g Tr.[8]). The Court also Ordered plaintiff to file any motion to enforce the settlement or seek sanctions by February 23, 2024.  (ECF No. 43).  The instant Motion was then filed on February 22, 2024. Defendant Agadjani, proceeding pro se, responded by filing the Countermotion on March 18, 2024.[9]

DISCUSSION

I.   Settlement Enforcement

The Court begins by addressing whether, as a matter of contract law, the Agreement may be enforced notwithstanding the fact that it was never formally executed by defendants.  For the

---

[7] The Cheeks motion and confessions of judgment were filed jointly as ECF No. 39-2.  Neither the Cheeks motion nor proposed confessions of judgment are independently paginated.  Thus, when citing to either document, the Court will cite to ECF No. 39-2 and utilize ECF pagination.

[8] Citations to "Hr'g Tr." refer to the Transcript of Civil Cause for Motion to Withdraw Before The Honorable Cheryl L. Pollak, which was created from a recording of the February 7th hearing and filed on the docket on June 27, 2024.  (ECF No. 46).

[9] The Countermotion purports to have been filed by both Mr. Agadjani and Trax "by their undersigned counsel."  (Countermot. at 1).  However, no counsel has appeared for either defendant, and the Countermotion is signed only by Mr. Agadjani.  (Id. at 5).  This Court has previously explained to Mr. Agadjani that "although he may proceed pro se, he will not be permitted to represent Trax in this proceeding, as corporations may not appear in federal court without counsel."  (ECF No. 43 at 2 (citing Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009)); see also Hr'g Tr. at 5:17–6:1 (advising Mr. Agadjani that "Trax[] cannot appear in federal court without a lawyer" and that if Trax did not retain an attorney, it could be subject to a motion for default judgment).  Mr. Agadjani's former counsel also advised him of this fact before withdrawing from the action.  (ECF No. 38-1 ¶ 5).  Trax had the opportunity to retain counsel to contest the Motion but chose not to do so. Thus, Trax has neither contested plaintiff's Motion nor supported Mr. Agadjani's Countermotion.

reasons set forth below, the Court concludes that the Agreement should be enforced over defendants' objections.

      A.     <u>Legal Standard</u>

           1.     <u>Enforceability of Oral Settlement Agreements</u>

"A settlement agreement is a contract that is interpreted according to general principles of contract law." <u>In re Am. Exp. Fin. Advisors Sec. Litig.</u>, 672 F.3d 113, 129 (2d Cir. 2011) (citing <u>Omega Eng'g, Inc. v. Omega, S.A.</u>, 432 F.3d 437, 443 (2d Cir. 2005)). As such, a settlement agreement exists only where there has been adequate offer, acceptance, and consideration to constitute a valid contract under the applicable state law. <u>Ostman v. St. John's Episcopal Hosp.</u>, 918 F. Supp. 635, 643 (E.D.N.Y. 1996). When such an agreement has been formed but has not been reduced to writing or executed by all parties, it may nonetheless be enforceable in the absence of any indication that the parties did not intend to be so bound prior to the full execution of a written agreement. <u>See</u> <u>Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC</u>, No. 04 CV 1621, 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005) (noting, in the context of a dispute over the enforceability of a settlement agreement, that "parties are bound to the terms of a contract even though it is not signed or even written") (quoting <u>Omega Eng'g, Inc. v. Omega, S.A.</u>, 98 CV 2464, 2004 WL 2191588 at *7 (D. Conn. Aug. 12, 2004)) (alterations adopted)); <u>Powell v. Omnicom</u>, 497 F.3d 124, 129 (2d Cir. 2007) (quoting <u>Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL–CIO</u>, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam)). Thus, "the mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." <u>Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC</u>, 2005 WL 1377853, at *5 (quoting <u>V'Soske v. Barwick</u>, 404 F.2d 495, 499 (2d Cir. 1968), <u>cert. denied</u>, 394 U.S. 921 (1969)).

The Second Circuit has adopted a four-factor test to determine whether the parties intended to be bound in the absence of an executed written agreement. In so determining, courts consider "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Kaczmarcysk v. Dutton, 414 F. App'x 354, 355 (2d Cir. 2011) (summary order) (quoting Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir.1985)). While no one factor is dispositive, Ciaramella v. Reader's Dig. Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997), the Second Circuit has repeatedly indicated that the first factor "is the most important," Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *7 (collecting cases).

Once a settlement agreement has been reached by the parties, it "is binding and conclusive and the parties are bound to [its] terms . . . even if a party has a change of heart." Elliot v. City of New York, No. 11 CV 7291, 2012 WL 3854892 (S.D.N.Y. Sept. 5, 2012) (quoting McDonald v. Dragone Classic Motor Cars, No. 395 CV 499, 2003 WL 22056626 (D. Conn. Apr. 29, 2003)). Indeed, "afterthought or change of mind are not sufficient to justify rejecting a settlement." Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (citations omitted). The district court is empowered to "enforce summarily, on motion, a settlement agreement reached in a case pending before it." Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974).

2.    Attorney's Authority to Settle on Behalf of a Client

It is undisputed that "the decision to settle is the client's to make, not the attorney's," and that the attorney must have at least apparent authority to enter into a settlement on behalf of his client. Fennel v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989) (citing United States v. Beebe,

180 U.S. 343 (1901)).  Apparent authority has been defined as the "power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency § 2.03 (2006).  A client does not automatically "create apparent authority for his attorney to settle a case merely by retaining the attorney."  Id. Nevertheless, the Second Circuit has held that "because of the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements, we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so."  In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996).  Thus, "[i]f an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld."  Fennel v. TLB Kent Co., 865 F.2d at 502 (citing International Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 55 (2d Cir. 1979)).  The burden of proof to show that the attorney lacked authority rests on the party challenging that attorney's authority.  In re Artha Mgmt., Inc., 91 F.3d at 329.

B.    Analysis

1.    Whether the Parties Entered a Binding Preliminary Agreement

The Court begins by addressing whether the parties entered into a valid settlement agreement at all; i.e., whether there was an offer, acceptance, and adequate consideration.  See Ostman v. St. John's Episcopal Hosp., 918 F. Supp. at 643.  As noted above, the parties first reached an agreement in principle to resolve this case during a settlement conference held before the undersigned on October 31, 2023.  (Minute Entry, dated Nov. 1, 2023).  During that conference, counsel for the parties agreed to a total settlement amount and agreed that the settlement would encompass all claims and counterclaims.  (Id.; see also ECF No. 35).  The only

thing left for the parties to do at that time was to "reach a mutually acceptable payment plan," finalize and execute a written agreement, and file the required settlement papers. (ECF No. 35).

As of November 17, 2023, the parties were continuing to discuss a "mutually acceptable payment plan" (ECF No. 35), and thus arguably had not reached a binding settlement agreement at that time. However, the parties agreed upon the payment terms between then and November 29, 2023, when defendants' then-counsel, Mr. Himes, filed a joint letter representing that "[t]he parties *have agreed upon the terms of settlement*, and a settlement agreement is being finalized for execution by the parties." (ECF No. 36 (emphasis added); see also ECF No. 39 (stating that "[j]ust before Thanksgiving, Mr. Scott Himes, Esq. (the defendants' attorney) and [plaintiff's counsel] drafted together the settlement agreement, the Cheek's [motion,] and [the] confession of judgement[]" for each defendant, and that plaintiff subsequently executed the settlement agreement on December 7, 2023, before transmitting it to defendants' attorney for signature). Mr. Himes purportedly confirmed as much in a communication to plaintiff's counsel, stating that "[d]efendants have agreed to pay, and [p]laintiff has agreed to accept, a total of $180,000, payable over approximately six months, in a settlement of all claims and counterclaims in the case." (Pl.'s Mem.[10] at 2). As plaintiff explains, the parties had ultimately agreed to the following key terms in exchange for a release of all claims and counterclaims: 1) a total settlement of $180,000 with 2) payments of $30,000 per month for six months, and 3) a confession of judgment for $650,000. (Id. at 1). Plaintiff also represents that Mr. Himes confirmed the defendants would execute the written Agreement, which counsel had finalized, in short order. (Id. at 2).

---

[10] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Motion to Enforce Settlement Agreement, filed jointly with the Motion on February 22, 2024. (ECF No. 44).

In light of the representations of counsel for both parties throughout October and November, the Court concludes that even if the parties had not entered a binding preliminary agreement at the settlement conference itself, they had done so as of November 29, 2023, as they had reached an agreement on all key settlement terms.  See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *4 (describing the "essential terms" of a settlement agreement as "the settlement amount," releases by one or both parties, and "dismissal of the lawsuit"); Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 548 (2d Cir. 1998) (stating that under New York law, parties enter into "a fully binding preliminary agreement" when they "agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document" (citing Teachers Insurance & Annuity Association v. Tribune Co., 670 F. Supp. 491 (S.D.N.Y. 1987) (Leval, J.), and Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 71–72 (2d Cir. 1989))).

The record also indicates that shortly thereafter, those settlement terms were memorialized, along with all other terms agreed to by counsel for the parties, in the written Agreement.  Counsel for both parties and the plaintiff himself all seemingly understood that the written Agreement reflected the final settlement terms that counsel had negotiated and ultimately agreed to on behalf of their respective clients.  The only thing left was for the parties to execute the written Agreement, which plaintiff did on December 7, 2023, before sending it to the defendants for their signature.  There is nothing to suggest that at the time plaintiff did so, the parties or their counsel were still negotiating or deciding whether to accept the terms of the Agreement.

The Court thus concludes that the parties, through their counsel, did in fact enter a binding agreement to settle this case, and that the terms of that agreement are reflected in the written Agreement signed by plaintiff.

2.      Whether the Agreement is Enforceable

Next, the Court turns to whether the Agreement is enforceable notwithstanding the absence of a fully executed written contract, starting with the first and most important of the four Winston factors: "whether there has been an express reservation of the right not to be bound in the absence of a writing." Kaczmarcysk v. Dutton, 414 F. App'x at 355 (quoting Winston v. Mediafare Ent. Corp., 777 F.2d at 80). Plaintiff notes that both his counsel and counsel for defendants "contributed many hours" to negotiating the key settlement terms, which they completed in late November, and then memorializing those terms in the written Agreement that was signed by plaintiff and transmitted to defendants for execution. (Pl.'s Mem. at 2–3; see also ECF Nos. 35–37, 39). He argues that neither party ever made an express reservation of the right not to be bound prior to the execution of the written Agreement, and, moreover, that the parties repeatedly apprised the Court that they had reached an agreement without invoking any such reservation. (Pl.'s Mem. at 2–3 (citing ECF Nos. 35–37)). In response, Mr. Agadjani simply argues that the agreement was not finalized or consented to by defendants. (Countermot. at 1–2). While Mr. Agadjani claims that he consistently opposed settling the case for the amount stated by plaintiff, and he refers to "email[s] and text messages" illustrating that he never agreed to the settlement, he did not describe or attach to his Countermotion these communications, nor did he file an affidavit or any other documentation in support of his claimed lack of consent. (Id. at 2).[11]

---

[11] In support of the Countermotion, Mr. Agadjani did submit an Affidavit dated March 18, 2024, in which he details the employment of plaintiff, along with plaintiff's alleged breach of trust, theft and fraud, causing

The Second Circuit has held that "the fact that formal documentation was contemplated" is not enough to imply an intent not to be bound prior to the execution of a written agreement; the party opposing enforcement must "show either that both parties understood that their correspondence was to be of no legal effect or that [the party seeking enforcement] had reason to know that [the other party] contemplated that no obligations should arise until a formal contract was executed." Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *6 (quoting V'Soske v. Barwick, 404 F.2d at 499). Nor is the "after-the-fact professed intent" of the party challenging enforcement sufficient to "substantiat[e] either of these possibilities" when there is no evidence of their contemporaneous, objective intent that does so. Id. (quoting V'Soske v. Barwick, 404 F.2d at 499).

The evidence before the Court, including counsels' representations to the Court during the settlement process and plaintiff's signature on the written Agreement, supports the conclusion that despite Mr. Agadjani's protestations otherwise, the terms of the settlement had been agreed to, and the memorialization of those terms within the Agreement was complete; all that was left was for defendants to execute the Agreement. There is nothing in the record to suggest that either party had expressed an "inten[t] not to be bound" until defendants had done so. Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *5 (quoting V'Soske v. Barwick, 404 F.2d at 499). To the contrary, as noted above, defendants' own

---

financial damage to the defendants. (Id. at 3–5). He further states that his "resources are depleted," prompting him to "consider self-litigation with assistance from my attorney cousin." (Id. at 4). He does not address the issue of the settlement or the settlement negotiations, except to set forth his position that he possesses significant evidence of plaintiff's "deceitful acts," which appears to be a reference to the conduct alleged within his counterclaim given the nature of the evidence described. (Id.) In further support of the claims against plaintiff, defendants submitted the Affidavit of Micky Bell, also dated March 18, 2024. (Id. at 8–10). In this Affidavit, Mr. Bell explains his marketing responsibilities for Trax since January 2020, as well as the financial strain caused by plaintiff's purported theft and the need to obtain loans to mitigate the damage. (Id.) It does not appear from Mr. Bell's Affidavit that he played any role in the settlement negotiations, nor does he speak to those negotiations. Mr. Agadjani also submitted an undated letter to this Court, essentially explaining the background of plaintiff's employment and the alleged misconduct, but not addressing the issue of the motion to enforce the settlement. (Id. at 6–7).

13

counsel represented to the Court on behalf of both parties that they had "agreed upon the terms of settlement," which were being memorialized in a written agreement to be executed by the parties. (ECF No. 36). That statement is not ambiguous, and it does not contain any indication that said agreement was contingent upon the execution of a written instrument. See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *7 (relying primarily on the language utilized in documents that evidence the existence of an agreement when assessing the first Winston factor). Moreover, the reservation clause in the written Agreement itself contemplates the existence of prior, enforceable settlement agreements between the parties. It does not provide that the parties will not be bound absent execution of a written agreement, or that no prior oral contracts exist between the parties, but, rather, that the written Agreement "fully supersedes any prior agreements between the Parties with respect to the subject matter contained herein." (Agr. ¶ 13(a)).

Thus, while the parties may have "inten[ded] to reduce" their oral agreement to writing, this fact "does not prevent that oral agreement from being enforced." Francis v. Home Box Office, 04 CV 7430, 2005 WL 1020863 at *4 (S.D.N.Y. Apr. 28, 2005). The Court therefore concludes that the first Winston factor weighs in favor of enforcing the Agreement.

Turning to the second Winston factor—partial performance of the contract—plaintiff has not presented evidence showing that defendants went so far as to pay plaintiff the amount agreed to by the parties. However, defendants' counsel arguably began performance of the contract by working with plaintiff's counsel to prepare a joint Cheeks motion for settlement approval. (See Pl.'s Mem. at 2 (stating that Mr. Himes transmitted a joint letter for settlement approval to plaintiff's counsel); Agr. ¶ 5(d)). Thus, the second factor weighs slightly in plaintiff's favor, or at worst is neutral, since it is "not surprising" that defendants did not perform and make

14

payments given Mr. Agadjani's attempt to repudiate the agreement over six weeks after the parties had reached an agreement in principle.  Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853, at *7.

Next, as noted above, it appears that the parties did agree to all of the relevant and material terms on or before November 29, 2023, and memorialized those terms in the written Agreement shortly thereafter.  (See pp. 10–12 supra).  Neither Mr. Himes's joint letter filed on November 29th, nor his communication to plaintiff's counsel enclosing a proposed Cheeks letter to be submitted to the Court in connection with the settlement agreement, makes reference to any further issues requiring negotiation.  (ECF No. 36; Pl.'s Mem. at 2).  Thus, the third Winston factor favors enforcement of the agreement.  777 F.2d at 80.

Finally, as to the fourth factor—whether the agreement is of the type normally committed to writing—the Second Circuit has held that "agreements of the sort committed to writing are generally ones that involve complex terms or have long-term effects."  Britto v. Salius, 360 F. App'x 196, 199 (2d Cir. 2010) (citing Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 326 (2d Cir. 1997)).  In cases involving FLSA claims, settlement agreements typically are reduced to writing and accompanied by a motion for court approval under Cheeks.  The same is generally true of sizeable settlement agreements "whose terms were not announced in open court" on the record.  Powell v. Omnicom, 497 F.3d at 130–31 (collecting cases).  Here, although the principal payment term was announced during a confidential settlement conference before this Court, neither that term nor any others were agreed to by counsel for both the parties in a judicial proceeding open to the public (i.e., in "open court").  Thus, the Agreement is arguably the sort of contract that would ordinarily be reduced to writing under Second Circuit precedent. Id.  However, even assuming that is the case, and thus that the fourth Winston factor favors

defendants, the first (and most important), third, and (to a lesser extent) second factors all favor enforcement.  The Court therefore concludes that the Agreement is enforceable notwithstanding the lack of a fully executed written agreement.

3.    Whether Defendants' Counsel had Authority to Settle

Finally, the Court turns to the question of whether Mr. Himes had authority to enter into the Agreement on behalf of defendants.  Until counsel moved to withdraw on December 21, 2023, the parties all proceeded in good faith with the understanding that Mr. Himes had such authority.  He appeared before this Court on October 31, 2023, and represented along with plaintiff's counsel that the parties had reached a settlement [in principle].  (See Minute Entry, dated Nov. 1, 2023).  Mr. Himes subsequently engaged in extensive negotiations with plaintiff's counsel as to the terms of the agreement and filed a letter on behalf of both parties seeking additional time to finalize the settlement, which counsel ultimately did before reducing the terms of settlement to writing.  (ECF Nos. 35–36).  He then transmitted to plaintiff's counsel by email a proposed Cheeks letter to submit the written Agreement to the Court for approval.  According to plaintiff's counsel, Mr. Himes represented to him at that time that his clients had agreed to the $180,000 amount payable over a six-month period.  (Pl.'s Mem. at 2, 4–5).  Although Mr. Agadjani now insists that he never agreed to settle this case on these terms and he wishes to pursue his counterclaims against Mr. Santiago (see Countermot. at 2), he did not raise any objections following the settlement conference or during the negotiations that followed.  Moreover, as noted above, Mr. Agadjani has not offered any contrary evidence to suggest that up until Mr. Himes was discharged, he lacked authority to negotiate a settlement on the defendants' behalf, or that during the period between October 31, 2023, and December 7, 2023, Mr. Himes was not acting with the authority of his clients.

16

The Court concludes that during the period in which the terms of the Agreement were agreed upon and reduced to writing, Mr. Himes was acting with at least the apparent authority of his clients.  Mr. Himes represented both to opposing counsel and this Court that he had such authority, and he proceeded to negotiate and ultimately agree to the material terms of settlement purportedly on the behalf of his clients and without any objection therefrom.  In such cases, courts "presume that [the] attorney-of-record . . . had authority to do so."  In re Artha Mgmt., Inc., 91 F.3d at 329.  The burden to overcome that presumption is on the party opposing enforcement of the settlement agreement, id., and if said party does not do so, the "settlement will be upheld,"  Fennel v. TLB Kent Co., 865 F.2d at 502.

Although it now appears that Mr. Agadjani has developed second thoughts about the settlement, and while there may have been a misunderstanding between Mr. Agadjani and Mr. Himes with respect to defendants' expectations for the case, none of Mr. Agadjani's allegations support the conclusion that Mr. Himes lacked the authority to enter into a binding settlement agreement on the defendants' behalf, and Mr. Agadjani has not produced any evidence that would support such a conclusion.  Therefore, the Court finds that the parties' settlement agreement, as reflected by the written Agreement, is enforceable, and the Court respectfully recommends that the district court enforce the settlement, subject to Cheeks review.

II.    Settlement Approval and Attorney's Fees

Having determined that the Agreement should be enforced as a matter of contract law, the Court now turns to the question of whether the Agreement represents a fair and reasonable compromise of plaintiff's FLSA claims and whether the requested fees and costs are reasonable. For the reasons set forth below, the Court concludes that it cannot, at this time, determine whether the Agreement or whether the requested attorney's fees and costs should be approved under Cheeks.

A.    Legal Standard

Parties may not "privately settle FLSA claims with a stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41 absent the approval of the district court." Fisher v. SD Prot. Inc., 948 F.3d 593, 599 (2d Cir. 2020) (citing Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 200). In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). Courts within this Circuit have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Prot. Inc., 948 F.3d at 600 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (applying the Wolinsky factors).

"Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs." Fisher v. SD Prot. Inc., 948 F.3d at 600 (citing 29 U.S.C. § 216(b); NYLL § 663(1)); see also Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008). The parties may agree to provide for attorney's fees and costs from the settlement amount rather than having plaintiff's counsel seeking them via a separate fee application. However, irrespective of whether the fee allotment is included within the terms of the settlement

18

agreement, Courts assessing a proposed settlement of FLSA claims must also examine any request for attorney's fees and costs.  See, e.g., Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)); Fisher v. SD Prot. Inc., 948 F.3d at 600 (noting that the need to review attorney's fees and costs may arise in the FLSA context both "where the settlement agreement reserves the questions of fees and costs for the court to decide" and where the settlement "incorporat[es] attorneys' fees and costs into the settlement amount").  The fee applicant must always submit adequate documentation supporting the requested attorney's fees and costs.  See Fisher v. SD Prot. Inc., 948 F.3d at 600 (citing cases); see also Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 182 (S.D.N.Y. 2015) (noting that "[c]ourts deny unsubstantiated FLSA fee requests and will decrease a requested fee if the hours billed are unreasonable or the hourly rate too high").

Courts in this Circuit have routinely found an award representing one-third of the settlement amount (after deduction of costs) to be reasonable.  See Allen v. County of Nassau, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023) (collecting cases).  However, the Second Circuit has made clear that although a 33% fee award is commonplace in FLSA settlements, there is no "maximum fee percentage" or "proportionality limit" on attorney's fees under the FLSA's fee-shifting provision, and that a fee percentage in excess of 33% of the total settlement amount may well be reasonable in many FLSA cases.  Fisher v. SD Prot. Inc., 948 F.3d at 602–05; see also Wang v. Masago Neo Asian Inc., No. 14 CV 6249, 2016 WL 7177514, at *4 (E.D.N.Y. Sept. 26, 2016) (approving a fee award of 40%).  Courts must therefore engage in an analysis of the requested fees irrespective of whether they amount to 33% or less of the total settlement amount.  See Heiloo v. Fruitco Corp., No. 18 CV 1917, 2019 WL

19

5485205, at *3 (S.D.N.Y. Oct. 25, 2019); <u>Santos v. YMY Mgmt. Corp.</u>, No. 20 CV 1992, 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021).

    B.   <u>Analysis</u>

The Agreement provides for a total settlement amount of $180,000, broken down into six equal payments of $20,000 to plaintiff and $10,000 to plaintiff's counsel as attorney's fees and reimbursement for costs. (Agr. ¶¶ 1, 2(a)). The parties agree to the dismissal with prejudice of all claims and counterclaims asserted in this Action, and they agree to reciprocal general releases, in addition to a few additional terms that are not relevant at this time. (<u>Id.</u> ¶¶ 5(a)–(b), 6). While counsel for the parties drafted a joint letter seeking settlement approval under <u>Cheeks</u> (<u>see</u> ECF No. 39-2), that letter was never filed in light of Mr. Himes' ultimate motion to withdraw from this action (Pl.'s Mem. at 2 n.1). Having reviewed the letter that plaintiff claims the parties intended to file, the Court concludes that it cannot accurately assess the fairness or reasonableness of the settlement terms or requested attorney's fees or costs at this time.

The principal issue is that the <u>Cheeks</u> letter filed by plaintiff's counsel is incomplete in some regard and inaccurate in others, ultimately depriving the Court of information necessary to engage in the analyses noted above. For example, the section titled "Plaintiff's Range of Possible Recovery" includes several placeholders and does not provide the Court with any information regarding plaintiff's likely range of recovery for all of his wage and hour claims, not just his "alleged back wages," if this case were to proceed to judgment. (ECF No. 39-2 at 2). The Court requires that information to engage in a <u>Cheeks</u> assessment. <u>See</u> <u>Boyle v. Robert M. Spano Plumbing & Heating, Inc.</u>, No. 15 CV 2899, 2016 WL 1688014, at *1 (S.D.N.Y. Apr. 27, 2016) (indicating that the court had previously denied approval in part because the parties "did not provide the Court sufficient information to determine Defendants' potential exposure in the matter"); <u>id.</u> at *4 (collecting cases wherein the rate of recovery was a central factor in

considering the fairness of the settlement).  The letter also mistakenly refers to the defendants as "Amazing Store & Smoke Shop" and "Sheikh"—neither of whom are defendants in this action—which appears to be a typo introduced by counsel for one of the parties or a holdover from an old draft.  (ECF No. 39-2 at 4).[12]

With respect to the fee request, while the letter first states that the requested fee award of $60,000 breaks down to $57,000 in legal fees and $3,000 in costs, it elsewhere states that the expenses total $4,180, and that plaintiff's counsel billed only $30,282.40 in fees.  (ECF No. 39-2 at 3).  The letter further misstates the requested fees as $16,423.33, and while it purports to attach "[p]laintiff's counsel's detailed billing records," no such records were filed on the docket.  (Id.)  These inconsistencies and the lack of documentation make it impossible for the Court to engage in the necessary assessment of the requested fees and costs.  See Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d at 182.

In light of the issues detailed above, the Court cannot make a recommendation on the fairness or reasonableness of the proposed settlement and requested fees at this time.

<u>CONCLUSION</u>

Based on the foregoing, the Court respectfully recommends that the district court GRANT plaintiff's Motion insofar as plaintiff seeks to treat the written Agreement executed by plaintiff as the parties' jointly proposed settlement agreement for purposes of the settlement approval process mandated by Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 200, and that Mr. Agadjani's Countermotion be DENIED.  However, because the Court is unable to adequately assess the fairness of the proposed settlement and requested attorney's fees based on

---

[12] The letter also twice states that defendants have agreed to pay $650,000 to plaintiff, which represents the confession of judgment amount but not the total settlement amount to be paid to plaintiff and his counsel.  (ECF No. 39-2 at 2, 5, 7).

the documentation submitted to date, the Court recommends that the district court DENY plaintiff's Motion for all purposes other than the limited one noted above, and that plaintiff be granted leave to file a formal motion for settlement approval and for attorney's fees and costs that rectifies the various issues noted above.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).  Plaintiff is directed to serve a copy of this Order promptly by certified mail, return receipt requested, on defendants, and to provide the Court with proof of service immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
        July 26, 2024

_Cheryl L. Pollak_
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York