UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

LUCIANO SANTIAGO,

                *Plaintiff*,           **MEMORANDUM AND ORDER**

   - against -               21-CV-7090 (KAM)(CLP)

MAKSUD TRAX AGADJANI and
TRAX NYC CORP.,

                *Defendants*.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Counsel for Plaintiff Luciano Santiago ("Plaintiff") has submitted a supplemental *Cheeks* Letter seeking approval of the proposed settlement, (ECF No. 61, Supplemental *Cheeks* Letter ("Supp. *Cheeks* Letter")), in compliance with this Court's Order dated October 4, 2024, which denied the previous motion for settlement approval without prejudice and directed Plaintiff's counsel to submit further evidence no later than October 10, 2024, (ECF No. 59, Memorandum and Order).  In light of the additional *Cheeks* information provided regarding Plaintiff's range of possible recovery, and the documentary support for Plaintiff's attorney's fee request, the Court now **GRANTS** the renewed motion for settlement approval, and retains jurisdiction to enforce the settlement agreement, which is set forth in the Court's Order dated October 4, 2024, (ECF No. 59), and is incorporated herein.  The

Clerk of Court is accordingly directed to close this case pursuant to the parties' settlement agreement, dismissing all claims and counterclaims asserted in the instant action in return for payment of the settlement amount by Defendants.

The Court will retain jurisdiction to enforce the settlement agreement entered into in this action, and approved in this Order. *See Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) ("to retain ancillary jurisdiction over enforcement of a settlement agreement . . . a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) ("where, in a federal court, the court makes the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order—the proper forum for litigating a breach is that same federal court") (internal quotation marks and citation omitted).

## BACKGROUND

The Court assumes the reader's familiarity with the background of this matter set forth in this Court's Order dated

October 4, 2024, granting in part Plaintiff's motion to enforce the settlement agreement reached with Defendants, and denying without prejudice Plaintiff's motion for settlement approval. (*See* ECF No. 59, Memorandum and Order.)   The Court concluded in its previous order that the proposed settlement could not be finally approved until Plaintiff provided additional information on Plaintiff's possible range of recovery, and provided additional information supporting the Plaintiff's attorney's fees requested. (*Id.* at 30-41.)   Nonetheless, the Court observed in its previous order "[a]lthough the deficiencies noted [] require that the settlement not be approved at this time, other factors weigh in favor of approval if the motion is renewed with information on the range of recovery." (*Id.* at 34.)   Plaintiff has now submitted a supplemental *Cheeks* letter with the additional information requested, and the Court will proceed to analyze whether the settlement amount and attorney's fees requested are reasonable.

## DISCUSSION

### I.   Fairness Review of the Settlement Agreement

The Parties in the instant case reached an enforceable proposed settlement agreement, which is incorporated herein, in the amount of $180,000 to be paid by Defendants to Plaintiff in resolution of all of Plaintiff's claims and Defendants' counterclaims. (*See* ECF No. 59, Memorandum and Order, at 29-30.) The settlement amount is payable over six equal monthly payments

of $30,000 each and is secured by a $650,000 confession of judgment. (*Id.*) Of the settlement amount, $60,000 is allocated to attorney's fees and costs. (Supp. *Cheeks* Letter at 4.) The Court will now proceed to determine, with the benefit of the additional information submitted by Plaintiff, if the proposed settlement agreement is fair and reasonable.

### A. Applicable Law

The Federal Rules of Civil Procedure afford litigants wide latitude in settling their disputes. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (noting that "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"). An exception to this rule exists for stipulated dismissals of FLSA actions. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Parties may not stipulate to dismiss an FLSA action without submitting the settlement offer to the district court for review. *Id.*

District courts in this circuit frequently look to the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to determine the reasonableness of a proposed FLSA settlement. *See, e.g., Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017); *Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016). These factors include:

4

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citation omitted); *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019) (referring to the *Wolinksy* factors examined as part of a district court's fairness review under *Cheeks*).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 206); *see also* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In the present case, attorneys' fees and costs arise in the context of a settlement incorporating attorneys' fees and costs into the settlement amount. *See, e.g., Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015) (reviewing FLSA settlement incorporating counsel's fees as part of the total settlement amount).

**B.    Analysis**

**1.    Plaintiff's Range of Possible Recovery**

Under the proposed settlement agreement, the Court found that Defendants agreed to pay $180,000 to resolve Plaintiff's claims, of which $60,000 will go to Plaintiff's counsel for fees and costs. (Supp. *Cheeks* Letter at 4.)   Thus, Plaintiff's net settlement—after the deduction of attorney's fees and costs—is $120,000.[1]

Plaintiff alleges he is owed approximately $119,028 in unpaid minimum wages, overtime compensation, liquidated damages, and prejudgment interest on his NYLL and FLSA claims. (*Id.* at 2.)   As an initial matter, the Court notes that Plaintiff makes several errors in his calculations.   *First*, Plaintiff erroneously calculates the award of pre-judgment interest, which is recoverable under the NYLL, on the award of unpaid wages *and* liquidated damages, rather than actual damages.   *See Silva v. Legend Upper W. LLC.*, 590 F. Supp. 3d 657, 662 (S.D.N.Y. 2022) ("An NYLL plaintiff may recover prejudgment interest only on his or her actual damages under the NYLL, not on his or her liquidated damages under the state law.")   *Second,* Plaintiff erroneously states that the minimum wage was $15 in 2017 and 2018.   The New York City minimum wage varied during the relevant period but was $10.50 per hour for small employers in 2017, and $12.00 per hour

---

[1] "Courts evaluate the fairness of a plaintiff's recovery *after* deducting attorneys' fees and costs." *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782 (KMK), 2021 WL 1964724, at *3 n.5 (S.D.N.Y. May 17, 2021).

for small employers in 2018.[2]  NYLL § 652(a).  Accordingly, the Court revises Plaintiff's calculations as follows:

*Minimum Wage:*

| Time Period | Minimum Wage | Regular Hours Per Week | Regular Pay Owed Per Week | Weeks Worked in Period | Pay Owed for Regular Hours |
|---|---|---|---|---|---|
| 2017 | $ 10.50 | 40.0 | $420.00 | 52.0 | $ 21,840.00 |
| 2018 | $ 12.00 | 40.0 | $480.00 | 52.0 | $ 24,960.00 |
| | | | | **Total:** | $ 46,800.00 |
| | | | | **Amount Paid by Def'ts:** | $ 31,200.00 |
| | | | | **Unpaid Minimum Wage Pay:** | $ 15,600.00 |

*Overtime Wages:*

| Time Period | Lawful Overtime Wage | Over-time Hours Per Week | Overtime Pay Owed Per Week | Weeks Worked in Period | Lawful Pay for Overtime Hours |
|---|---|---|---|---|---|
| 2017 | $15.75 | 20 | $315.00 | 52.0 | $ 16,380.00 |
| 2018 | $18.00 | 20 | $360.00 | 52.0 | $ 18,720.00 |
| | | | | **Total:** | $ 35,100.00 |

Therefore, the Court finds that Plaintiff would be owed $15,600 in unpaid minimum wages, utilizing the time periods and hours set forth by Plaintiff, and $35,100 in unpaid overtime pay, for a total of $50,700.  Plaintiff would presumably seek an equal amount of liquidated damages, for a total of $101,400 in damages,

---

[2] Because Plaintiff does not allege any facts showing that Defendants employed more than ten employees, the Court assumes for purposes of its analysis that Defendants constitute a small employer for purposes of the New York Labor Law.  *See Campos Marin v. J&B 693 Corp.*, No. 19-CV-569 (JGK)(KHP), 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022) (applying lower, small employer rate where plaintiff failed to allege that employer had eleven or more employees).

not including pre-judgment interest, on Plaintiff's NYLL and FLSA claims.  The Court calculates Plaintiff's pre-judgment interest, at the 9% NY statutory rate on the unpaid wages only, at $30,950.00 as of October 11, 2024, utilizing December 31, 2017, as the intermediate date, and with daily prejudgment interest calculated at $12.50.[3]  N.Y. CPLR § 5004.  Accordingly, the Court calculates Plaintiff's range of recovery on the NYLL and FLSA claims as $132,350.00, as opposed to Plaintiff's counsel's calculation of $119,028.00.[4]

Plaintiff's remaining claims, including false arrest, *prima facie* tort, malicious prosecution, defamation, and false imprisonment, are less susceptible to calculation with mathematical precision.  Nonetheless, the Court will consider the claims given the Second Circuit's statement that "[w]here a settlement dismisses with prejudice both FLSA and state law claims, it seems to us a district court must take into account at least the existence of the state law claims in assessing the reasonableness of the settlement, which turns in part on the total potential recovery."  *Fisher*, 948 F.3d at 607 n.12.  Plaintiff's counsel estimates the damages on these five claims as being between $61,000 to $650,000.  (Supp. *Cheeks* Letter at 3.)  The Court sees

---

[3] Daily pre-judgment interest is calculated as ($50,700 x 0.09)/365 = $12.50.
[4] The Court's estimate is higher notwithstanding Plaintiff's errors because Plaintiff only calculated one year of pre-judgment interest, as opposed to calculating interest from a reasonable intermediate date between the dates Plaintiff utilized for calculating damages.  (Supp. *Cheeks* Letter at 2.)

no reason to question the estimate of Plaintiff's counsel, given his deep familiarity with the case, and will rely on Plaintiff's counsel's estimate for purposes of analyzing the settlement amount.

In light of the above, the maximum recovery Plaintiff could have expected in this action was $782,350, and his actual recovery of $120,000 therefore represents approximately 15% of the maximum recovery in the instant case. The Court notes that other courts in this circuit have found a settlement recovery of approximately 15% to be "fair and reasonable and in line with other cases approving FLSA settlements in this Circuit." *Soto v. Triumph Constr. Corp.*, No. 21-CV-2449 (VSB), 2023 WL 3483753, at *3 (S.D.N.Y. Apr. 26, 2023); *see also Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (collecting cases) (approving a settlement amount around 13% of plaintiff's potential recovery). This conclusion is further bolstered by the significant risks that Plaintiff would face if he were to continue litigating this action, and the possibility that Plaintiff might himself be found liable to Defendants for one of the counterclaims asserted. Accordingly, the Court finds the settlement amount in the instant case to be reasonable in light of Plaintiff's range of possible recovery and the risks of continued litigation.

### 2.    The Remaining Factors

As noted in the Court's previous Memorandum and Order, the other factors weigh in favor of approval of the proposed settlement now that the motion has been renewed with additional information.

*First*, the Court agrees with Plaintiff that settlement will avoid extensive litigation costs, including discovery costs and the corresponding costs of briefing dispositive motions.  (*See* Supp. *Cheeks* Letter at 3.)  The proposed settlement would allow the parties to end this litigation, which has spanned five years across state and federal court.

Second, there is a legitimate legal dispute between the parties, and settlement is a means of avoiding significant litigation risks and expenses for both.  Defendants raised several affirmative defenses to all of Plaintiff's claims, including his FLSA claims, and further alleged counterclaims against Plaintiff, presenting an additional risk to further litigation by Plaintiff. (*See* ECF No. 29, Defendants' Answer and Counterclaims.)  These legal claims are sufficient to demonstrate the bona fide nature of the dispute.

*Third*, the Court finds that the parties properly engaged in bargaining at arms-length to reach the settlement agreement.  This is shown by the parties' attendance at a settlement conference held by Magistrate Judge Pollak, their compromise of the heavily disputed claims presented in this litigation, and the negotiations

that took place over the past year, which are also reflected in the emails, texts, and billing records provided by Defendants' former counsel.

*Fourth*, the parties and counsel negotiated in good faith and agreed upon the settlement terms outlined above.  The record is devoid of any evidence of fraud or collusion by the parties.

*Fifth*, the record shows no presence of similarly situated employees.  Even if it did, the settlement agreement would not bar their claims.  This factor does not weigh against settlement.

*Sixth*, given the time and resources spent during this multi-year litigation, it is likely that Defendants will be deterred from violating the FLSA.  Additionally, because the Plaintiff is no longer employed by Defendants, it is also unlikely the Plaintiff's individual circumstances will recur.

*Seventh*, the record offers no history of previous non-compliance with the FLSA by the Defendants, nor has the Plaintiff alleged such previous non-compliance.  Thus, this factor does not weigh against settlement approval.

*Eighth*, the desirability for a mature record is weak.  The parties engaged in written discovery under the supervision of Magistrate Judge Pollak during 2023, and there is no evidence that further information is necessary for Plaintiff to determine his range of possible recovery in the instant case.

Accordingly, the Court finds that the remaining factors weigh

in favor of settlement approval.

### 3. Attorney's Fees

"In an FLSA case, the Court must independently ascertain the reasonableness of the [attorney's] fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). When considering applications for attorney's fees, courts in this circuit employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a presumptively reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency agreement. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-CV-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting

cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17-CV-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done"). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (internal quotation marks and citation omitted).

Here, Plaintiff's counsel requests $60,000 (or one third) out of the $180,000 settlement. (Supp. *Cheeks* Letter at 4.) The Second Circuit has explicitly stated that "all applications for attorney's fees [must] be supported by contemporaneous records." *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711

F.2d 1136 (2d Cir. 1983)).  Plaintiff's counsel explains that in contingency cases, such as the instant case, he does not usually keep track of the hours worked because the client is not billed hourly.  (Supp. *Cheeks* Letter at 4.)  Plaintiff's counsel did, however, keep a "handwritten log" of the hours worked on this matter in 2022 through 2024.  (*Id.*)  Plaintiff's counsel notes that he has "been working on this case since 2019" and therefore the records submitted only reflect a subset of the work he undertook on this case.

The Second Circuit has explained that "there are few examples of this court permitting a district court to award fees in the absence of full contemporaneous records" following the *Carey* decision in 1983.  *Scott*, 626 F.3d at 133.  In cases where such recovery was allowed, "counsel has always maintained at least some contemporaneous records."  *Id.; see also Nu-Life Constr. Corp. v. Bd. of Educ. of the City of New York*, 795 F. Supp. 602, 606 (E.D.N.Y. 1992) (allowing fees for hours supported by contemporaneous records, but denying recovery for unsupported hours).  Accordingly, the Court will consider Plaintiff's counsel's request for attorney's fees in light of the handwritten log for 2022, 2023, and 2024.[5]

---

[5] Plaintiff's counsel also submitted phone records showing calls with his client in 2024, (ECF 61-1 at 6-8), but given the lack of any annotation showing the purpose of any of the calls (and the relative lack of active litigation in this matter since October 31, 2023), the Court will not consider the records in its calculation.

Plaintiff's counsel's records for 2022 through 2024 reflect a total of 199.25 hours worked, based on the Court's independent calculation of all the entries in Plaintiff's counsel's handwritten ledger. (ECF 61-1 at 1-5.) During this period, Plaintiff's counsel briefed several motions, including a motion for sanctions and a motion for leave to amend, and also reviewed and compiled "a mountain of discovery." (Supp. *Cheeks* Letter at 4-5.) Accordingly, in light of the Supreme Court's guidance that courts "need not, and indeed should not, become green-eyeshade accountants," the Court "take[s] into account [its] overall sense of [the] suit" and finds that the 199.25 hours expended by Plaintiff's counsel in the instant case were reasonable. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The 199.25 hours expended by Plaintiff's counsel on this case provide an effective hourly rate of $301.13 for Plaintiff's counsel, Mr. Jennings, who is the only attorney for whom records were submitted. This hourly rate is with the range of the "prevailing rates for attorneys in the [Eastern District of New York], which are approximately $ 300-$ 450 per hour for partners, $ 200-$ 300 per hour for senior associates, and $ 100-$ 200 per hour for junior associates." *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019); *see also Silva*, 590 F. Supp. 3d at 664 ("Courts in this district have determined that fees ranging from

15

$250 to $450 is appropriate for experienced litigators in wage and hour cases.").    Accordingly, because Plaintiff's request for attorney's fees is reasonable both under the percentage method and pursuant to the lodestar cross-check, the Court finds the attorney's fees requested in the proposed settlement, specifically $60,000 of the $180,000 settlement amount, to be reasonable.

### CONCLUSION

For the reasons set forth above, Plaintiff's request for approval of the Proposed Settlement Agreement is granted.    Now that the settlement has been approved, the Defendants' obligations are in effect.    The Court retains jurisdiction to enforce the Settlement Agreement.    Should Defendants fail to meet their obligations under the Parties' settlement agreement, Plaintiff may move to enforce the terms of the Settlement Agreement, as incorporated herein, including entering judgment for the amount, $650,000, stated in the Confession of Judgment, that was described in an email to Defendants from the Defendants' former counsel on December 8, 2023.    (ECF No. 56-6, Exhibit F to the Miller Decl., at 1 (noting that the confession of judgment is "security for being entitled to pay over six months" and can be used "only if one of the $30k payments is not made" after "notice and 30 days to cure the nonpayment").)    The Court notes, and emphasizes to Defendants, that such judgment would be entered jointly and severally against both Defendant Agadjani and Trax pursuant to the terms of the

16

Settlement Agreement.

The Clerk of Court is directed to close this case, serve a copy of this Memorandum and Order on Defendants, and file proof of service on the docket no later than October 15, 2024.

**SO ORDERED**

Dated:      October 11, 2024
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

17